DECISION AND JUDGMENT ENTRY
This is an appeal from a January 20, 1999 judgment of the Toledo Municipal Court that appellant, Verna Chears, is guilty of assault, in violation of Toledo Municipal Code ("TMC") § 537.03. Appellant has presented one assignment of error for consideration on appeal that reads:
 "THE VERDICT OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THAT THE APPELLANT ESTABLISHED THE AFFIRMATIVE DEFENSE OF SELF-DEFENSE BY A PREPONDERANCE OF THE EVIDENCE. "
The Supreme Court of Ohio explained the standard of review when an appellate court is considering whether a finding of guilt is against the manifest weight as follows:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Blacks supra, at 1594.
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. * * *" State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
Keeping this standard of review in mind, we now consider the arguments presented in this case.
Appellant argues that the trial court's finding that she is guilty of assault is against the manifest weight of the evidence. She says she presented testimony that showed she acted only in self-defense when she inflicted physical injury on the man who was then the coach of her twelve-year old son's basketball team.
Appellee, the city of Toledo, says this court must affirm appellant's conviction. Appellee says that the trial court was in the best position to determine the credibility of the witnesses, and did not believe appellant and her now thirteen year old son who said appellant acted in self-defense.
Appellant was charged with a violation of TMC § 537.03(a), which provides: "No person shall knowingly cause or attempt to cause physical harm to another." We have carefully reviewed the trial transcript in this case and conclude, for the following reasons, that appellant's conviction for this crime is not against the manifest weight of the evidence.
Four persons testified at trial, the basketball coach upon whom appellant inflicted injuries, his brother (who was the assistant coach for the team), appellant's son and appellant. All four witnesses were in agreement on several facts. For instance, they all agreed that appellant's son was a talented player on his basketball team. The boy and his team played a basketball game at Leverette Junior High School in Toledo, Ohio. Sometime during the game he played that night, he held onto the rim. A basketball commissioner saw the incident, which was against league rules, and he confronted the boy's coach after the game saying sanctions of some type had to be imposed.
The coach testified he told the boy about the charge and told him to apologize, but the boy would not apologize. The coach stayed at the school to scout another team that was playing in a later game. He and his brother testified that during the second game, they saw appellant approach the complaining basketball commissioner and that they heard her yelling at the commissioner. Appellant said she did talk to the commissioner, but she said she did not yell at him.
After the second game ended, the coach, his brother and their children went out to their cars in the parking lot. All the witnesses agreed that appellant summoned the coach over to the window of her van, which was also in the parking lot, by beeping her vehicle's horn and waiving her hand at the coach.
The coach's version of what happened next varied from the version told by appellant and her son. According to the coach, when he approached her van window, he asked her if he could help her. He said she immediately began yelling, screaming and cursing at him. He told her she had a problem, and they continued to engage in a verbal exchange with one another. He said appellant abruptly began pulling her van away, nearly running over his feet, which were "up under the running boards" so he could talk with her. He said he jumped out of her path and yelled an obscenity at her as she pulled away. He said she then stopped the van and that she and her son burst out of the driver's door and the passenger's door of the van and came toward him.
He said appellant then began spitting on him and kicking him. He also said she scratched him on his face and neck. His brother jumped between them, trying to break up the fight, but appellant kept kicking the coach by kicking between his brother's legs.
All four witnesses agreed that at some point in the melee, the coach's brother pulled appellant's son from the fray.
Appellant said the coach then began hitting her son while his brother held her son. The coach and his brother said they never hit appellant or her son during the incident.
The coach said he finally told appellant he had enough, and he began chasing her through the parking lot. He said when he saw that she was running away, he began walking back toward his car. He said appellant turned and leaped toward him like a frog. He said she kicked him two more times and he told her he was going to call the police.
The coach's brother did not remember any time during the incident when his brother chased appellant in the parking lot. He said his attention was diverted for some time while he tried to keep appellant's son from joining the fight.
The coach asked if anyone in the parking lot had a telephone. Since no one did, he went back into the school and used a phone there to call the police. When he came back to the parking lot, appellant and her son were gone. He waited for the police to arrive and filed a police report. The record includes pictures the police took of appellant showing the scratches on his face and neck and of a swollen area on his leg.
The coach's brother testified to many of the same facts reported by the coach. He did differ on some details. For instance, he testified that appellant got out of the van alone, and her son got out later, rather than jumping out simultaneously as the coach said. Also, as we already noted, he did not recall a time when the coach chased appellant through the parking lot.
Appellant and her son testified that she was not confrontational with the coach when he responded to her summons to her van. They said they stayed at the school for the second game because their van would not start at the close of the first game, and they were waiting for appellant's husband to come and help them start the van.
Appellant acknowledged she talked with the basketball commissioner during the second game, and said she did so at the urging of the coach's brother. She said she never raised her voice during the conversation with the commissioner. She testified that she and her son were told by third parties during the course of the second game that the coach and the commissioner had agreed to keep her son out of the next game in the championship playoffs as a sanction for his holding the rim.
She said her husband arrived and helped her get her van started. As she was driving from the parking lot, she saw the coach getting into his car. She said she signaled to him to come over to her van because she wanted to know whether or not she should bring her son to the next game. She said that she was not upset and that she addressed the coach calmly and politely, told him what she had heard and asked him what was his position. She said he then went "ballistic", and began cursing at her.
She said she put her hand up and told him she could see they were not "getting anywhere." She started to drive away. She said she then heard him yell an obscenity, and she stopped the van. She got out, went to the front of her van and asked him to repeat what he had said. She testified she wanted to confirm what she had heard so she could report it to school officials, since she could not believe a man who was supposed to be teaching good character to children would behave as he had or would talk as he had. She said the coach "started bouncing around the parking lot" and that she put up her arms. She said he hit her on the arm while he continued to curse at her.
She said after the coach hit her on the arm, she kicked him. Her son then came "flying" out of the van. She said the coach's brother grabbed and held her son, while the coach punched her son. She said she yelled at the coach to fight her instead of her then twelve-year old son, and told her son to get back into the van, which he did. She said the coach "made a mad leap at me". She thought he was trying to "flip" her, so she scratched him. She said the coach's brother tried to stop the fight, but the coach persisted, so she kicked him. She said the coach eventually listened to his brother and went into the school. According to her, the coach's brother told her the coach was "having problems" and that she should not worry. He told her to get in her car, go home and forget it ever happened. She said she was so "stunned" she did as he said and left.
She said she went to her husband's place of work after she left, but he was not there. She then went home to wait for him and began writing letters to school officials telling them about the coach's behavior. She and her husband went the next morning to file a police report, but could not because appellant had already filed a report.
After having read all of the testimony, we cannot say that the trial court, as the trier of fact, lost its way when it found the coach and his brother to be the more credible witnesses. While there were some inconsistencies in the details they recounted in their testimony, we find those inconsistencies were not surprising given the speed with which the events happened and given that their attention was not always focused on the same person. The coach's brother was preoccupied with keeping appellant's son from the fight for some portions of time, while the coach's attention was focused on appellant, who was spitting, kicking and scratching him.
Because it accepted the testimony of the coach and his brother as true, the trial court was justified in finding that the state presented evidence to show every element of the offense of assault. Likewise, because it rejected the version of events told by appellant and her son, the trial court was justified in ruling that appellant did not act in self-defense. Accordingly, appellant's conviction is not against the manifest weight of the evidence, and her sole assignment of error is not well-taken.
The judgment of the Toledo Municipal Court is affirmed.
Appellant is ordered to pay the court costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ____________________________ Peter M. Handwork, J.
 James R. Sherck, J., Mark L. Pietrykowski, J.